Counsel Ready. May it please the Court, Good morning. On behalf of appellant Robert Kent, Mr. Kent was charged in a two-count indictment with possession and distribution of child pornography. He pled guilty to possession and was sentenced on that count giving rise to the issues presented here in the appeal. Kent then had a bench trial on the distribution count and was found not guilty on the basis that the government had failed to prove that he knowingly distributed the single file that was found. To prove beyond a reasonable doubt. Correct, Your Honor. Absent questions from the Court on the issues 2 and 3 presented in the brief, I'd like to distribution enhancement. It's a different standard for sentencing, right? It is, Your Honor. The Court might find or might, right, might find because it was a bench trial that the distribution wasn't proved by a, beyond a reasonable doubt and yet take into account in sentencing deciding that it was proved by preponderance, right? That's absolutely something that the Court could have done. However, there was no indication in the record that that is what the Court did. Why isn't that what we must infer from the record? The Court said distribution is obviously where they had found no distribution on the distribution count. Well, we'd have to think the judge was either, I don't quite see how to parse those things other than to infer that the judge must have found by preponderance that there was distribution. Your Honor, I think one of two errors occurred here by the district court. Either it says, the court says that the district court properly construed the distribution enhancement to require knowing conduct but procedurally erred by failing to explain how its factual findings at sentencing differed from its factual findings at trial and whether that indeed was based on. Let's say there had not been a distribution count at all. Let's say it had been the same case but the government, you know, right before the trial started decided, look, we don't really want to proceed with the distribution count and just go forward with the possession count. Would the district, and the district judge had done exactly the same thing at sentencing as he did or as it did, as he did, the district judge, said exactly the same thing. Would he have had to explain anything? Your Honor, I think that would certainly be somewhat of a different case because the resolution of disputed questions of fact put the case in a very different procedural posture given the court's findings in the trial context. Nonetheless, to the extent the court relied on the PSR and the rationale in the PSR was simply that based on the agent's download of the single file at issue, the enhancement applied. Nonetheless, I think that there would be a substantive challenge to the application of the enhancement. Okay. Let's put the substantive challenge aside. Yes, Your Honor. As far as the procedural challenge is concerned. Yeah. The district judge would not have had to give an explanation, particularly why he accepted the rationale of the PSR, which relied on distribution. It's only the fact that the judge found distribution, he found him not guilty of distribution that creates a procedural problem, if I understand correctly. It's not only the fact that it creates a special procedural problem here. Of course, the law, as Your Honor knows, is that the district court must resolve issues presented by the parties. And here the defense objected and could have objected, even absent the trial evidence, to the application of the enhancement on the basis of lack of knowledge. The defense pointed out that, in fact, this was an unresolved question in the Ninth Circuit. And nonetheless, the court just applied the enhancement summarily without addressing the parties' objections. Therefore, I don't think there was sufficient. I see. So in your view, raising the objection is enough to call forth the need for explanation. I don't mean to put words in your mouth, but I'm just trying to make sure I understand you. Yes, Your Honor. I think that the district court, in this context on these facts, and given the objection that was raised by counsel... So even without the finding of not guilty? Even without the finding. I think that... Unless there are questions on this, could you just segue right into the substantive... Yes. ...why you think that this is not substantively supported? Yes, Your Honor. I think that the error, as the court pointed out, there may have been a procedural error, as we just discussed. I understand. So we've talked about that. Yes. And I think I understand your position. Very well. The more likely error that occurred here was a failure to properly construe the guideline. The reason I say that is on the facts here, we have... You know, when you say the more likely error, that somewhat undermines your argument about the first error. Because if that's not so likely, then we should just go right to the second. That's just a passing comment. Yes. Well, what I'm saying is that... You're learning from the master, I would say. Thank you, Judge Reinhart. Thank you, Judge Reinhart. What I meant to say was the second error. There was error, is what I'm trying to say. And I think that given the court's factual findings, and I want to talk very briefly about the disputed findings of fact that the court made in the course of the trial, which informed, I think, the error, the substantive error at sentencing. But... Why isn't the fact that the agent was able to download one file enough? Because the mens rea in the context of sentencing, just like the mens rea in the context of the trial proceedings, is a knowing mens rea. How do we know that? We know that from the plain language of both the guideline and the commentary to the guideline. We know that from the history of the amendments to the guideline. And we can also look to the body of case law that's evolved in which every circuit, with the exception of the Tenth Circuit, to have considered this issue, has construed the guideline to require knowing conduct. Now, in this context, the trial court made a number of critical findings of disputed fact. The evidence was that Kent understood how the file sharing program worked, but took affirmative steps to actually remove the files and place them elsewhere to essentially obviate the sharing function of the file program. So let me show I understand the architecture. Kent had a peer-to-peer connection of some sort, right? That's correct. And correct me if I'm wrong, because I'm just trying to make sure I understand. So what this enabled others who use the same peer-to-peer network, others outside his computer, outside the outside world, to download files that were in certain directories or folders? It would allow other users, third-party users, to download any files that were in what's called the shared drive. And that drive, the way this particular peer-to-peer program worked, the trial evidence showed was that when Kent would choose a file to download, it would download by default to that particular shared drive. The trial evidence further demonstrated that because he knew that and because he did not want to share with third-party users, he would then remove the files from that shared drive. So how did the agent get that file? The evidence was that... Do we know? Yes. What happened here was that there were files found. There were 10 files of a total of 700 seized from his residence, which were largely on compact disks and in other areas that did not allow them to be shared with other users. There were 10 files in that shared drive. Now, of those 10, the evidence was that the agent made repeated attempts, hundreds of attempts over the course of one month period to download files from the shared drive. And of those 10, only succeeded in downloading one file. And, in fact, that was one of the disputed questions of fact that the court relied on in finding Kent not guilty insofar as the court held that the fact that the government was unable to download any additional files suggested that the computer was, in fact, turned off during that period, and the court found that to support the idea that the one single file that had been left in that folder and downloaded by the agent was left there inadvertently by mistake or accident, and that that, in fact, rebutted the mens rea requirement for the statutory count, in other words, the statutory distribution. You address it by hours of time. You are out of time. Why don't we hear from the government? I don't think you went to yellow. I think my clock says... It's going up. Oh. If you keep going, it'll be fine. It'll never be up. Very well. The last time I looked, it said... I'm not sure the clock is working properly. The last time I looked, it said one minute and 50 seconds. I did want to... It goes to zero, and then it goes up again in the red. So this is seconds in the red you are. I did want to reserve some time for rebuttal, and I guess I just looked at... You've got negative 34 seconds. Thank you, Your Honor. Maybe we'll round that out to nothing. No, a minute or something like that. But why don't we hear from the government? May it please the court. I'm Sean Peterson on behalf of the United States. This is a case in which the defendant pleaded guilty to possession of child pornography. He admitted to using peer-to-peer file-sharing software to download child pornography for a period of 10 years. He admitted that he knew how to do it. He admitted that he knew how the file-sharing software worked, that files he downloaded via the program were placed in his own shared folder, and that other shareware users could then view and access the files in the defendant's own shared folder. Although he stated that he usually moved files out of the shared folder, he did not like to share files with... because he did not like to share files with other users. He admitted that he did not always do so. Specifically, he said that he didn't do so if he was busy doing other things, and that could go on for an extended period of time. Now, on October 15, 2010, Agent Coakley downloaded a video containing child pornography from the defendant's computer. Using a browse function in the software... This was before the arrest? This was before the arrest, correct. So he doesn't know that he's... I'm sorry, I... He hasn't been contacted. He doesn't know anything. He's just using his computer. Exactly. Agent Coakley, on a government computer, went into the file-sharing software and was able to identify a child pornography file and actually, using the browse function, identify what appeared to be additional child pornography files on the defendant's computer. And that file was in a shared file folder on the defendant's computer, which allowed it to be... But he couldn't download the other ones. He... The evidence in the record at that point was that he was only... that he was only able to download that one file. And... And he did so. So how does he know that the other ones are... So... Do they have a hash? So if I... So time goes by, and on December 2, 2010, HSI agents executed a search warrant at the defendant's residence. In executing that search warrant, they recovered the defendant's laptop computer, a desktop computer with two hard drives, as well as multiple compact disks. And on those various media, they found suspected child pornography. And specifically on defendant's laptop, in the shared folder that allowed access to all other users of the SHARAZA program, they found ten files of suspected child pornography. And... And particularly with regard to the file that was downloaded on October 15, there was a hashtag comparison done, and it was determined that it was, in fact, the same file that was downloaded. And... I'm just wondering, just so I understand, you said he used the peer-to-peer client to see that there were ten files, one of which he was able to download. He... On October 15... This is before they seized the laptop. Correct. On October 15, he was able to see that there were various apparent child pornography files. That's the question I had of you. At that point, he doesn't know what the files are, except for the one that he downloads. When you say apparent, did they sort of say kiddie porn? Was it the name? Did he recognize the signature of the file? It was apparent from the title of the file name. From the title of the file, okay. There's evidence in the trial record that the way that users use Sharaza, also particularly from the defendant, his own admissions as to how he used it, that certain language would be placed into a search function in Sharaza, which is the peer-to-peer software in this case, and that that would then allow them, the defendant in this case or any user, to search for files with that type of word or relevant language there. And in particular, the record contains references to various types of terms that are associated with child pornography, such as PTHC, RIT, YGOLD, and additional terms. And then, if I can complete the sequence, so then when you say at some point they go in, they seize the laptop, and they find the very files that he saw, that the agent saw? It's not, no, the record doesn't, is not specific as to whether or not that the files that the agent saw when he was browsing were the same ten that were discovered on the laptop. It is specific that the one file that was downloaded was, in fact, the same that was discovered on December 2nd. But then they go in, and they find the shared drive, and they find ten files that turn out to, in fact, be child pornography. Yes, Your Honor. Including the one that he actually downloaded. Yes, Your Honor. And in addition to that, and building upon that, a forensic review was done of the laptop, and there's trial testimony from a different agent that through that review, he was able to determine essentially the download date, as well as the last access date of these various ten files. And they showed that the ten files had been downloaded from as recent as two weeks prior to the search, which was executed on December 2nd, or as far back as approximately six months prior to that. When you say download, I understand. So that would have been the date that they were pulled down from another server onto the laptop. What does the access mean? That means they were opened, or could it tell whether somebody had uploaded them? I'm only asking what the record shows. Sure, fair enough. And what the record shows in this case, because a similar question came up at the trial court level, is that the, first off, it's not possible, at least according to the record here, for a user of Shiraz to know that his file has been uploaded by somebody else. So the upload leaves no mark? Exactly. From the point of view of the? From the point of view of the person who has maintained a file in a shared folder. I see. Yeah. And as far as last access date, it could mean a number of things. And it's not, it could even mean, for example, that a, that another piece of software such as virus, you know, a virus checker had gone through and had looked at those files. But there is testimony provided that in this case, in this particular case, it's unlikely that that, in fact, was what the last access date referred to, because where that happens, that is that a virus checking program runs through all the files, usually the last access date would be extremely close in time. We're talking about seconds of difference in each of the files, and that wasn't the case in this case. So access in this sense means most likely the file was opened by a human being? Very potentially it was opened by a human being. I think that is a likely explanation. I wouldn't say that it's the most likely explanation. What is the most likely explanation? I'm sorry, Your Honor. I spoke up. One of the alternatives, you have the virus program, what else could happen? That any other kind of program that could be run on the, that could run through and access the files would then, you know, leave a similar mark, so to speak. But that would be, any other program, that suggests if it's something that someone didn't deliberately do, it's got to be running through all the programs like the virus software, you know, we mentioned, you need to have the same time for a bunch of files. I take it this file time, last access time, was distinctly different from what surrounded it. So it suggests something specific went to this file. Are there alternatives other than either a download by somebody from the outside or the computer owner accessing it himself intentionally? Thank you, Your Honor. I agree. I mean, those are the scope of possible alternatives that I'm aware of. And in fact, I'd like to take back my earlier statement. The word likely has caused problems today, so we'll strike it from the vocabulary. That is what. This case, maybe all cases, you know, it's likely a good idea. Thank you. You're down to five seconds, four, three. You can just run out of your time, you know, like football. I'll yield my time. We'll give you a minute for a bottle if you should take it. Your Honor, the PSR essentially applied a strict liability standard in applying the enhancement on the basis of the agent's download. The application note to the guideline is very clear in terms of the examples it gives as to what type of conduct triggers the download. That's a little bit of an overstatement. I mean, he has a shared folder which is accessible by a peer-to-peer client that's used by people to shuttle child pornography. I don't think that's really quite strict liability to say that we can have a strong inference that if it was in there, he meant to share it. Well, but in fact, the trial evidence was just the opposite. The evidence was he didn't intend to share, that he habitually removed files, and the court credited those statements and found that they were consistent with what the forensic showed. If the court, having made those disputed findings of fact, had then proceeded to sentencing and had done what Your Honor posited, had said, well, but, you know, a different standard of proof applies here, and therefore I'm going to make different findings of fact for purposes of sentencing than I did at the trial court, naturally the court would have explained its reasoning. I think that's the most plausible view of the record. Maybe the judge thought, this is a pretty general sentence anyway. This is half the, less than half maybe than the minimum sentence of the guidelines, the guidelines range, right? That's correct, Your Honor. So maybe the judge thought, I've not only gone to the bottom of the range, and I realize judges have lots of discretion on that, but I've actually gone half, gone below half. What else can I say? Your Honor. It sounds like your client got a pretty good deal, must have had a good lawyer. Notwithstanding that fact, I do agree. He got a below guidelines sentence. And an excellent lawyer. And excellent lawyers from my office. The correctly, the properly calculated range would have been a low end 78-month sentence. What he got was 48 months. That fact notwithstanding, the court must properly construe the guidelines. Here it did not. And that's the basis for the substantive claim. At the very least, there was the procedural error we previously discussed for his failure to explain why he was doing something different at sentencing than he had done in the context of the trial. Okay, thank you.
judges: Kozinski, Reinhardt, Clifton